## MERCHANTS NAT. BANK v. MCKINNEY *et. al.*

1. Under and by virtue of the provisions of Chapter 21, Code 1877, the governor of the late Territory of Dakota proceeded to organize the unorganized county of Douglas, by appointing three county commissioners therefor, as provided in said act, upon a petition presented to him purporting to be signed by the voters of said county, but which contained the names of persons not residents of the county, and the names of persons signed thereto without their knowledge, and when there were not to exceed 20 voters in said county. But it is not shown by the record that the governor had any knowledge that any name upon the petition was not genuine, or that there were not the required number of voters in said county. *Held*, that the commissioners so appointed were *de facto* commissioners, and, they having appointed the other county officers of said county, the organization was, at least, a *de facto* county organization.

2. Only two of the county commissioners appointed by the governor received their commissions and qualified, but these proceeded to appoint a register of deeds, which officer was by statute made *ex officio* county clerk, who qualified and entered upon the duties of his office. *Held*, that such register of deeds and *ex officio* county clerk was a *de facto* officer.

3. The two commissioners with the register of deeds appointed by them

as *ex officio* county clerk, appointed a third commissioner in place of the one appointed, but who failed to qualify, who qualified and entered upon and discharged the duties of his office as such commissioner. *Held*, that such third commissioner was a *de facto* officer.

4.  The three county commissioners appointed the other county officers of the county, who duly qualified and entered upon the discharge of their duties as such county officers, and such county organization continued to transact the business of said county for more than a year.  *Held*, that the county organization was, at least, a *de facto* county organization, and the acts of the officers, as to the public and third persons, were valid.

5.  The board of county commissioners, so constituted and organized, allowed certain accounts and issued county orders or warrants, signed by the chairman of the board, county clerk, and sealed with the seal of the county.  *Held*, that such orders or warrants were *prima facie* valid and binding upon the county.

6.  The legislature passed an act segregating the county of Douglas from the other portions of the territory, defining its boundaries, and giving it its name.  *Held*, that there immediately came into existence the usual county offices in such county, and that the filling of such offices by the appointment of the county commissioners by the governor, and the other county officers by such commissioners, was the filling of *de jure* offices, and made all the officers of said county, who qualified and acted under such appointment, at least *de facto* officers.

7.  The county orders or warrants in controversy in this action having been issued by a board of county commissioners, who were at least officers *de facto*, are *prima facie* valid and binding upon the county; and hence the plaintiff, having failed to establish the invalidity of the warrants and a breach of the express warranty made at the time of the purchase of the warrants, was not entitled to a judgment, under the findings of the referee.

(Syllabus by the Court.   Opinion filed May 28, 1891.)

Appeal from district court, Yankton county.   Hon. JAMES SPENCER, Judge.   Reversed.

The facts are fully stated in the opinion.

*L. B. French* and *James H. Teller*, for appellants.

County warrants are not contracts and are not negotiable instruments, in the sense of the law merchant.   In case of a sale of county warrants there is no implied warranty on the part of the vendor except that they belong to him and are not forgeries.   Wall county v. Monroe, 103 U. S. 74; White v. Robinson, 51 Mich. 73; School District v. Stough, 4 Neb. 359; Burroughs on Law of Pub. Sec. 642; § 503 Dillon Mun. Corp.; Otis

v. Cullom, 92 U. S. 447; Port Royal v. Graham, 84 Pa. St. 426; Dana v. San Francisco, 19 Cal. 486. It is necessary in a suit upon an implied warranty both to plead and prove a *scienter.* Littauer v. Goldman, 72 N. Y. 506. § 1014 Civ. Code does not apply to county warrants.

The right of respondents to recover because of failure of consideration, arises solely from the right such failure gives to rescind the contract. The warrants were purchased in July and October, 1881, and no attempt was made to rescind till January, 1884. Such laches would defeat their recovery, even if there were an entire failure of consideration. Crucier v. Pennock, 14 S. & R. 51; Raymond v. Baar, 13 Id. 318; Getty v. Devlin, 54 N. Y. 415; Upton v. Trebilock, 91 U. S. 45; Watson Coal Co. v. Casteel, 68 Ind. 476; Barfield v. Price, 40 Cal. 585; Marston v. Simpson, 54 Cal. 189.

It having been found by the referee that there was an organization of Douglas county, and that the warrants in suit were issued by the officers of the county organization, their title to office cannot be enquired into collaterally in this action. *In re* Ah Lee 6 Sawyer, 424; Fowler v. Beebe, 9 Mass. 321; Silea v. Stone, 119 Mass. 465; Trumbo v. People, 76 Ill. 561; State v. Alling, 12 O. 16; People v. White, 24 Wend. 539; Laver v. McGlachlin, 28 Wis. 364; Rolls County v. Douglas, 105 U. S. 728; Stockle v. Silsbee, 41 Mich. 615.

The decision of the governor of the territory as to the existence of the conditions necessary before the appointment of three county commissioners was final. It was his determination of the fact and not the real existence of the fact that authorized him to act. Virginia v. West Virginia, 11 Wall. 39; Coleman v. Eaves, 92 U. S. 484; Ramsey v. People, 19 N. Y. 41; Knox County v. Aspinwall, 21 How. 235; Bissell v. Jefferson, 24 Id. 287; Lyons v. Munson, 99 U. S. 684; Orleans v. Pratt, Id. 677; State v. Goodwin, 6 S. W. 679.

The governor had the power of appointment, and having it exercised it, and though he were induced by fraud to make the appointment, the appointees who qualified and acted were at least officers *de facto.* State v. Carrol, 38 Conn. 449; Norton v.

Shelby County, 118 U. S. 425; Brown v. Lamb, 37 Me. 428; State v. Pawnee County, 12 Kan. 425; Board v. Lewis, 133 U. S. 198; *Ex parte* Strange, 21 O. St. 61; Mallett v. Mining Co. 1 Nev. 96; State v. Jacobs, 17 O. 143; State v. Bloom, 17 Wis. 521; Coleridge v. Bingham, 1 Allen, 333: But respondent contends there could be no officers *de facto*, because there were no offices *de jure* to be filled. The offices did exist, and as these parties came in by color of right their acts are protected as those of *de facto* officers. Leake v. Blasdel, 6 Nev. 40; State v. Pawnee County, 12 Kan. 426; State v. Stevens, 21 Kan. 210. §§ 3–15, Chap. 21 Pol. Code; § 2131 Civ. Code; Marbury v. Madison, 1 Cranch 137.

The acts of officers *defacto* are valid so far as they involve the interests of the public or third persons. If, then, there was a *de facto* organization of the county, the issue of the warrants was valid, and respondent's case fails. Horter v. Eltzroth, 111 Ind. 159.

*R. B. Tripp,* (*Bartlett Tripp* and *Robert Dollard*, of counsel) for respondent.

Respondent, in the court below, moved for judgment upon the pleadings, evidence report of the referee, and all proceedings in the case, which motion was granted. Appellants can bring the evidence and proceedings before this court only by a bill of exceptions or statement. Pardrem v. Taylor, 9 Pac. 607; Bostwick v. Knight, 5 Dak. 307; Hemme v. Hays, 55 Cal. 339; Cornell v. Davis, 16 Wis. 686; Cotrill v. Cramer, 46 Wis. 488; Campbell v. Hayes, 18 Pac. 860; Goyheinech v. Goyheinech, 22 Pac. 175; Mulchy v. Glazier, 51 Cal. 626.

From the sale of the warrants by the defendants to plaintiff, under § 3638 Comp Laws, there was a warranty on the part of defendants that the instruments were binding upon the county. This warranty exists, also, under the rules of the common law. This liability existed independent of the question of a *scienter*. Sharon v. Sharon; 16 Pac. 345; Bank v. Jarvis, 20 N. Y. 226; Andrews v. Gillespie, 47 N. Y. 487; Hartwell v. Northern, P. E. Co. 41 N. W. 732; Young v. Cole, 2 Bing. N. C. 724; Furniss v. Ferguson, 15 N. Y. 457; Rogers v. Walsh,

12 Neb. 28; Id. 18 N. W. 135; Flynn v. Allen, 57 Pa. St. 482; Gilchrist v. Hilliard, 53 Vt. 592; Fagan v. Morgan, 3 At. 465; Boyd v. Anderson, 1 Over. 438; Granberry v. Howpe, 30 Tex. 409; Russel v. Crilchfield. 39 N. W. 186; Budd v. Eyerman, 10 Mo. App. 437; Wood v. Sheldon. 42 N. J. L. 421.

It was unnecessary for the plaintiff to show a demand upon the county and a refusal to pay the warrants before maintaining this action. Walsh v. Rogers, 18 N. W. 135; Flynn v. Allen, 57 Pa. St. 482.

The warrants in question are not binding upon Douglas county, because the organization of the county under which these warrants were issued was invalid. That the governor should be "satisfied" was but one of the conditions precedent to the legal organization of the county. Not only the decision of the governor, but the existence of the facts themselves prescribed by the statute, were necessary to confer the power to act in the organization. His decision was not final, and could not, in itself, confer jurisdiction. §§ 1, 2, Chap. 21, Pol. Code; Cagwin v. Town, 84 N. Y. 541; Griffiths v. Frazier 8 Cranch, 9; Dooland v. Car, 125 U. S. 618; Liebman v. City, 24 Fed. 705; Mullagan v. Smith, 59 Cal. 206; Bank v. School Dist. 43 N. W. 822; Perryman v. Bethune, 1 S. W. 231; Stack v. Blackburn, 20 N. W. 478; Smith v. Sherry, 11 N. W. 465; Bank v. City, 53 N. Y. 49. There having been only fifteen or twenty voters in the county, when the law required fifty, it follows the organization was fraudulent and therefore invalid. State v. Sillon, 21 Kan. 207; Lewis v. Comanche County, 35 Fed. 345; Martin v. Ingham, 17 Pac. 173; State v. Ford County, 12 Kan. 441; Board v. Lewis, 133 U. S. 198. Invalid acts of the executive could not create a *de facto* organization in the sense that it would have any powers. Eaton v. Walker, 43 N. W. 638. Appellant's contention that the county offices exist in unorganized counties, and that as these parties came in by color of authority their acts are protected, is in direct conflict with the authorities. State v. Parker, 25 Minn. 215; State v. McFadden, 23 Minn. 427; People v. McGuire, 32 Cal. 143; Walsh v. Commonwealth, 89 Pa. St. 426.

The organization of Douglas county was further invalid, for the reason that while three commissioners were appointed by the governor, but two qualified, and two commissioners could not organize the county. Water Works Co. v. Hughes County, 5 Dak. 154; Railroad v. Commissioners, 16 Kan. 302; Schenck v. Peay, 1 Wood, 175; Id. 1 Dill, 207; Williamsburgh v. Ford, 51 Me., 599; Keller v. Frost, 22 Barb. 400; People v. Nostrand, 46 N. Y. 375; City v. Hazen, 5 Cal. 169; Cassin v. Zovalla Co. 8 S. W. 97; Pike Co. v. Rowland, 94 Pa. St. 238; State v. Pratt, 5 Halst. 161; Hutchinson v. Ashburn, 5 Neb. 402; Shakespear v. Smith, 20 Pac. 294; People v. Peters, 4 Neb. 254; Hazen v. Liche, 11 N. W. 413; Olio v. Treas. 22 O. St. 144; Ballard v. Davis, 31 Miss. 523; Ormville v. Palmer, 10 At. 451; Lord v. Lord, 4 Id. 44; Daniels v. Ripley, 10 Mich. 237.

The warrants in question were not binding upon Douglas county for the reason that the first commissioners have no power to issue warrants at all. McDonald v. Hovey, 110 U. S. 629; Fullerton v. Spring, 3 Wis. 667. Even if the commissioners had power to issue warrants, these in question were void as being in excess of the legal limits. § 32, Ch. 21, Pol. Code; Bank v. School Dist. 42 N. W. 760; Book v. Earl, 87 Mo. 246; People v. May, 10 Pac. 641; 12 Id. 838; Lake County v. Rollins, 9 Sup. Ct. Rep. 651.

CORSON, J.   This is an action to recover of the defendants the consideration paid by plaintiff for certain Douglas county warrants, alleged to have been sold and transferred by the defendants to the plaintiff in the year 1881. The case was tried by a referee, who found and reported the facts, upon which a judgment was rendered by the court in favor of the plaintiff for $2,993.15 and costs. From this judgment and order for judgment the defendants appeal to this court. Before considering the appeal upon its merits, it will be necessary to dispose of a preliminary objection made to the hearing of this appeal, upon the ground that there is no bill of exceptions in the record. It is contended by the respondent that it moved for judgment in the court below, "upon the pleadings in said ac-

tion, evidence taken therein, report of the referee, and all proceedings had in the case," and that the evidence and proceedings can only be brought before this court by a bill of exceptions. There would be much force in the objection if the appeal was from the order only, but as it is taken from the judgment also, which brings before us for review the judgment roll, which contains the pleadings, report of the referee and judgment, which can be reviewed in the absence of a bill of exceptions, the objection is without merit, so far as it is made to the record. This court will only look into the judgment roll, and the errors assigned thereon, and determine whether or not the judgment is sustained by the pleadings and findings of fact. This is all, as we understand them, the counsel for appellants asks us to do; hence the objection is disposed of by the decision of this court, made on the motion to dismiss this appeal at the April, 1890, term of this court. 45 N. W. Rep. 203. See, also, Blossom v. Ferguson, 13 Wis. 75; Railroad Co. v. Lyons, 30 Wis. 61.

This brings us to the merits of the case. The plaintiff in its complaint alleges that defendants warranted the said county orders, so sold by them to this plaintiff, to be the warrants of said Douglas county, and to be binding, according to their purport, upon said county; and it further alleges that said warrants were wholly false, forged, fictitious, fraudulent, and void. The answer puts in issue these allegations. It is claimed by respondent that these warrants were illegal and void, for the reason that they were issued by a pretended board of county commissioners of Douglas county, which was illegally appointed, and acted without authority of law. The referee finds that, as to the warrants described in the fourth cause of action, there was an express warranty on the part of the defendants; and hence it becomes necessary for us to determine the validity of the organization of said Douglas county, and of these warrants, notwithstanding the referee found, as to the balance of the warrants, that there was no express warranty. It will be necessary, therefore, to briefly state the facts disclosed by the findings in reference to the organization of that county.

At a session of the territorial legislature of the Territory of Dakota, prior to February, 1881, Douglas county was segregated from the balance of the territory, its boundaries defined, and its name given to it; but it remained unorganized until the spring of 1881, when a petition purporting to be signed by the voters of said Douglas county (how many does not appear from the record) was presented to Gov. N. G. Ordway, then governor of said territory, praying for the organization of said county. Some of the names appearing on the petition the referee finds were signed thereto without the knowledge or consent of the parties whose names so appear thereon; that the petition contained names of persons not residents of said Douglas county; and that at the time said petition was presented to the governor, and the commissioners hereinafter referred to appointed, there were not to exceed 20 voters living in said county. The governor, without any knowledge, so far as the record discloses, that said petition was not what it purported to be, and that there were not 50 voters in said Douglas county, appointed Walter H. Brown, E. B. Hoyett, and Charles H. Stillwell county commissioners of said county. Stillwell did not receive his commission, and failed to qualify, but Brown and Hoyett qualified by taking the requisite oath, and filing a bond as provided by law, and thereafter acted as such commissioners. The two commissioners, Brown and Hoyett, appointed one Alfred Brown as register of deeds and *ex officio* county clerk, who duly qualified. The two commissioners then, acting with Alfred Brown, *ex officio* county clerk, appointed one Frank Neese a third county commissioner to fill the vacancy caused by the failure of Stillwell to qualify. Neese qualified, and was elected chairman of the board. The board so constituted appointed the other county officers of said county provided for in organized counties who qualified and entered upon the discharge of their duties as such county officers, and the county government so organized continued to transact the business of the county for more than a year. During the year 1881 said board issued county orders or warrants of

said county, signed by Frank Neese as chairman of the board, Alfred Brown as county clerk, and sealed with the seal of the county,—a portion of which were the warrants in controversy in this action. The referee further finds that defendants had no knowledge of the alleged illegal organization of said Douglas county, or that said warrants had been irregularly or fraudulently issued, or that they were not good and valid warrants of said county, issued in payment of a valid subsisting indebtedness of said county, and that said defendants had no knowledge of any facts tending to show that said warrants were illegally or fraudulently issued. And the referee further finds that the plaintiff had no knowledge of any facts tending to show said warrants were illegally or fraudulently issued.

The law in force at that time for the organization of new counties was Chapter 21, Code 1877, Sections 1, 2, and 3 of which are as follows: "Section 1. Whenever the voters of any unorganized county in this territory shall be equal to fifty or upwards, and they shall desire to have said county organized, they may petition the governor, setting forth that they have the requisite number of voters to form a county organization, and request him to appoint the officers specified in the next section of this act. Sec. 2. Whenever the voters of any unorganized county in the territory shall petition the governor, as provided in the preceding section, and the said governor shall be satisfied that such county has fifty legal voters, it shall be the duty of the governor, and he is hereby authorized, to appoint three persons, residents thereof, county commissioners for such county, who shall hold their office until the first general election thereafter, and until their successors shall be elected and qualified. Sec. 3. Said county commissioners, after having qualified according to law, shall appoint all the county officers of said county required by law, who, after having qualified, shall hold their office until the next general election, and until their successors shall have been elected and qualified."

It will be observed that the first section provides that "whenever the voters of an unorganized county shall be equal

to fifty or more, and they shall," etc., and that by the second section it is provided that "whenever the voters of an unorganized county * * * shall petition the governor as provided in the preceding section, and the said governor shall be satisfied that said county has fifty legal voters," etc., the governor shall appoint three persons commissioners of said county, etc.   Appellants contend that the legislature has left the matter of determining the fact whether there were the requisite 50 voters to the governor, while the respondent as strenuously insists that there must exist, as a matter of fact, the 50 voters in the county, and the governor must also be satisfied of that fact before he has jurisdiction to act at all in the premises.   The question is not free from difficulty, but we are inclined to adopt the theory of the law contended for by the appellants,—that when the petition sets forth that there are the requisite number of voters in the county, and the governor is satisfied of that fact, his decision must be regarded as *prima facie* a determination of a matter left to his judgment and discretion, so far, at least, as the public and third parties are concerned.   The power to organize new counties was primarily in the legislature, but that body saw proper to provide for their organization by general laws, and, having done so, these laws must receive a reasonable construction.   The legislature having made it the duty of the governor, when he was satisfied that a county had 50 voters and upwards, and they petition him for an organization, to proceed and organize it, by the appointment of three commissioners, it would seem that such appointment could not be questioned in a collateral proceeding, where neither the county nor its officers are parties.   To allow the decision of the governor to be controverted in such a case would be to overturn the doctrine long established, that the acts of *de facto* officers are good as to the public and third persons.   The learned counsel for respondent has invoked the rule applied in many cases affecting the title to property, or the right to issue county or municipal bonds, where it has been held that the fact of the existence of certain conditions precedent to the right of the officers to act must be shown before the officer has jurisdiction

to act at all; and cites Cagwin v. Town of Hancock, 84 N. Y. 532; Liebman v. City and County of San Francisco, 24 Fed. Rep. 705; Mulligan v. Smith, 59 Cal. 206.

We think there is a well defined distinction in principle between this class of cases and the case at bar. In those cases, and cases of that class, the condition precedent must exist before any action is authorized on the part of any officer. It was not provided in those cases that the facts should be found to exist or be proved to exist to the satisfaction of some officer specified, who is authorized to act when he is so satisfied. But in the case at bar it is made the duty of the governor to appoint, and he is authorized to appoint, county commissioners, when the voters present to him a petition setting forth that they have the requisite number of voters, and request the organization of the county, and he shall be satisfied that the county contains 50 or more voters. The term "satisfied" imports examination, investigation, and a decision. We are of the opinion, therefore, that the legislature intended to vest in the governor the power, in the first instance, at least, to determine the question of whether or not there are 50 voters in the county, and that the language used is broad enough to carry out that intention. The legislature evidently intended to vest in the executive authority to organize new counties, and, to prevent questions involving the legality of such organizations being raised in a collateral proceeding, it intended to make his decision so far conclusive as to make such an organization at least a *de facto* organization. It cannot be presumed that the legislature intended to leave so important a matter as the organization of a new county, as respects the public and third persons, to be determined by the courts, years perhaps after the organization of such county, and when important rights have been acquired under such organization. Can the public be expected to re-examine the proceedings of the governor, ascertain whether or not the signatures to the petition are genuine, take a census of the county, and ascertain, at its peril, whether or not there actually existed the required number of voters in the county to authorize the governor to organize it,

before it can transact business with the county officers of such county? Should the public be required to look further than to see that a county organization actually exists, with officers performing the duties usually performed by county officers of a county? We think not. That there can be a *de facto* county organization has been recognized by a number of decisions of the supreme court of the State of Kansas and the supreme court of the United States. State v. Pawnee Co., 12 Kan. 426; State v. Ford Co., Id. 441; State v. Stevens, 21 Kan. 210; State v. Sillon, Id. 207; Comanche Co. v. Lewis, 133 U. S. 198, 10 Sup. Ct. Rep. 286.

The question came up in the Kansas cases in a direct proceeding by the state against the county and its county officers. In two of the cases the county organizations were sustained, notwithstanding fraud was shown in their organization, because of legislative recognition, which was held to legalize and make what was before a *de facto* organization a *de jure* organization. And two were held not to be *de jure* organizations, because not so recognized by the legislature, and their organizations were set aside. In State v. Pawnee Co.. *supra,* the court says: "A *de facto* organization was effected with a full set of county officers, and with all the paraphernalia of a legally organized county. From that time up to the present it has exercised all the powers and duties of a legally organized county. On March 4, 1873, while said county had a *de facto* existence as an organized county, the legislature recognized its organized existence. It is claimed said Pawnee county has no valid organization on account of fraud and irregularities in its organization. We shall not stop to inquire whether the organization was originally valid or not, for, as there was a complete organization *de facto*. we think the recognition by the legislature cured the supposed fraudulent and defective organization, and the county, from that time forward, became a legally organized county." In Comanche Co. v. Lewis, *supra,* Mr. Justice BREWER, speaking of the organization of a Kansas county, says: "It is universally affirmed that, when a legislature has full power to create corporations, its acts recognizing as valid a *de facto* corporation,

whether private or municipal, operates to cure all defects in steps leading up to the organization, and makes a *de jure* out of what before was only a *de facto* organization." The question of *de facto* officers will be discussed later on. The fact that there may be a *de facto* county organization renders it unnecessary to hold in this case that the decision of the governor was conclusive upon the question of the number of voters in said Douglas county, and hence we do not pass upon the question here. It is enough for the purposes of this case to hold that his decision, and his action under it, did have the effect to create a *de facto* organization of that county.

But it is contended by the respondent that if the governor had authority to appoint county commissioners for that county, still in the county of Douglas there was not even a *de facto* organization, for the reason that only two of the persons appointed county commissioners qualified, and these two had no authority to act without the third commissioner, and hence all acts of organization by these two were without authority, and absolutely void. We are of the opinion that the position of counsel for respondent is not well taken.

The rule invoked, that, where certain persons are required to perform certain acts as a board, no act of the board will be valid until said board is filled by the number required to constitute the board, as is stated by Justice MILLER in Peay v. Schenck, Woolw. 175, is not applicable to this case for two reasons: (1) Because the appointment of county officers is by the law made by the commissioners, and not by the board of county commissioners; and (2) because our statute has provided that a joint authority to three or more public officers is to be construed as giving authority to a majority of them. Section 4765, Comp. Laws. In the case decided by Justice MILLER, above cited, he says that the statute of the United States had been changed in respect to requiring all to act, but that such change was made after the sales made in that case had taken place, and hence the provision could not be applied to that case. The two county commissioners who qualified received their appointment and commissions from the governor,

who was the officer named in the statute to make such appointment, and, having qualified and entered upon their duties as such commissioners, they were *de facto*, if not *de jure*, officers. The governor had appointed the three commissioners, and his power was exhausted, and the failure of one to qualfy must be regarded as though the commissioner had died before he had qualified, and before the other county officer had been appointed. The two commissioners assumed to and did appoint a register of deeds, who was *ex officio* county clerk. The appointment was made by the persons who by law were required to make the appointment. The appointment may not have been valid, being made by only two commissioners, when three had been appointed by the governor, but the person appointed was not an intruder. He was in under color of title, and that is all that is required to constitute an officer *de facto*. Having been appointed, and having assumed the office, and proceeded to discharge its duties, his acts, as regards third persons and the public, were valid. The public and third persons transacting business with his office were not required to investigate his title to the office, but could rely upon the fact that he was in possession of the office, performing its duties, and that he was an officer *de facto*, whose acts were good as to them.

The two commissioners, and the register of deeds, as *ex officio* county clerk, appointed the third county commissioner under the provisions of the statute which provides that a failure to qualify, as provided by law, constitutes a vacancy in the office, and is by law to be filled, in the case of a county commissioner, by the remaining commissioners and county clerk and probate judge. The referee finds that the two commissioners and county clerk made this appointment, and the finding is silent as to the probate judge. As these officers were not constituted a board, we think the appointment by the three, without the probate judge, made the third commissioner so appointed at least a *de facto* commissioner. Had the probate judge acted, (had there been one,) the appointment by the two commissioners and the county clerk would have been good though the probate judge, if present, had voted for some other

person as commissioner; hence we conclude that the absence of the probate judge did not render the appointment void, and that the commissioner so appointed was, at least, a *de facto* officer. The three commissioners then proceeded to appoint the balance of the county officers provided for organized counties. These officers being appointed by the county commissioners, who, if *de jure* officers, were the proper persons to make the appointments, held their offices under color of title, and were *de facto* officers. In Carleton v. People, 10 Mich. 250, the court said: "And all that is required, when there is an office, to make an officer *de facto*, is that the individual claiming the office is in possession of and performing its duties and claiming to be such officer under color of an election or appointment, as the case may be. It is not necessary that his election or appointment shall be valid, for that would make him an officer *de jure*. The official acts of such persons are recognized as valid on grounds of public policy, and for the protection of those having official business to transact." And in Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. Rep. 1121, Mr. Justice FIELD says: "When an office exists under the law, it matters not how the appointment is made, so far as the validity of his acts is concerned. It is enough that he is clothed with the *insignia* of the office, and exercises its powers or functions." The case of State v. Carroll, 38 Conn. 449, is regarded as a leading case upon the subject of *de facto* officers. In that case an act of the legislature authorized the clerk of a city court, in case of the sickness or absence of the city judge, to appoint a justice of the peace to hold the court during the temporary absence of the judge. A justice having been called in by the clerk of the court, and having acted as such judge, his acts were called in question on the ground that the act authorizing the clerk to call him in was unconstitutional and his act void. The court held that, whether the law was constitutional or not, the justice called in was a *de facto* officer, and his acts while sitting as such judge are valid. In this case the court defines an "officer *de facto*" as follows: "An officer *de facto* is one whose acts, though not those of a lawful officer, the law,

upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office are exercised—*First.* Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be. *Second.* Under color of a known or valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like. *Third.* Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public. *Fourth.* Under color of an election or appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such." We think all the officers of Douglas county were good *de facto* officers, under the third rule laid down by the court in that case. See, also, State v. Alling, 12 Ohio, 16; People v. White, 24 Wend. 539; Lavler v. McGlachlin, 28 Wis. 364; Ralls v. Douglass Co., 105 U. S. 728; Stockle v. Silsbee, 41 Mich. 615, 2 N. W. Rep. 900; Fowler v. Bebee, 9 Mass. 231; Petersilea v. Stone, 119 Mass. 465; Broadwell v. People, 76 Ill. 561; *In re* Ah Lee, 6 Sawy. 410, 5 Fed. Rep. 899; Mallett v. Mining Co., 1 Nev. 188. In State v. Alling, *supra*, the supreme court of Ohio held that a clerk of the court, appointed by *de facto* judges, held the office as a *de jure* clerk, and could not be removed in *quo warranto* proceedings.

But the counsel for respondent insists that no county officers existed in Douglas county, or exist in any unorganized county, and cannot exist until the county is legally organized; that is, it is only by legally organizing the county that they can be brought into existence, and that until Douglas county was legally organized, in contradistinction from a *de facto* organization, there could be no county officers, either *de facto* or *de jure*. That there can be no *de facto* officer unless there is a *de jure* office is

a well-settled law. Norton v. Shelby Co., *supra*; Carleton v.
People, *supra*. Were there, then, *de jure* offices to be filled
when the governor proceeded to organize Douglas county? As
stated, the county of Douglas had been segregated from the
other portions of the territory, its boundaries defined, and its
name given to it long prior to its attempted organization, in
February, A. D. 1881. The county was by this act created and
brought into existence, and the county offices pertaining to a
county when organized were, we think, from that time existing
offices to be filled in the manner provided by law. This is
made more apparant from the fact that there is no law creating
county offices, except the general law, which provides that each
organized county shall have the following officers, naming
them, (chapter 21, § 15, Code 1877,) and neither the governor
nor the county commissioners were authorized to create such
offices, but only to fill them by appointment. The legislature
must have understood, therefore, that, upon segregating a
county from the balance of the territory, defining its boundaries
and giving to it its name, such offices existed, for it authorized
the governor to appoint three persons, residents of said county,
"county commissioners," and these commissioners were author-
ized to appoint "all the other officers of said county required
by law." What county officers, and required by what law?
Clearly, the officers provided for by section 15, c. 21, Code
1877. The offices, then, were simply filled when the governor
appointed three persons county commissioners and they ap-
pointed the balance of the officers. In Walsh v. Com., 89 Pa.
St. 419, the court, speaking of the organization of a new
county, says: "The moment the life of the county began there
came into being the several county offices specified in the con-
stitution. They were not offices to be filled by clerks or agents
or deputies *pro hac vice*. They were offices and they were va-
cant. All the conditions under which the constitutional duty
of the governor to select incumbents subsisted." In Leake v.
Blasdel, 6 Nev. 40, the court says: "The county itself, as we
understand the law, was unconditionally created by the act,
and as completely segregated from the county of Nye as it

could be by legislative action. * * * This simply declared that the described territory shall be the county of Lincoln,— not at some future time, not upon the happening of anything in the future, but upon the passage and approval of the act. There may be a county without a government of its own, as is often the case." So we say here the county existed from the moment it was segregated from the other portions of the territory, its boundaries defined, and its name given to it, and all the offices provided by law existed. They were vacant, it is true, but they nevertheless existed, ready to be filled whenever certain conditions should exist. It is a fact of no small significance that in either of the Kansas cases cited, nor in the case cited from the supreme court of the United States, was the question of the existence of offices *de jure*, to be filled, raised by counsel or discussed by the court; yet the law of Kansas relating to the organization of new counties was quite similar to our own, as it existed when Douglas county was organized. The court held in those cases that there was evidence of the grossest fraud, the population being entirely insufficient to authorize the organization of the county, and the governor misled by false petitions and affidavits; yet the organizations were held good *de facto* organizations, which only could have been done upon the theory that *de jure* offices existed that could be filled with *de facto* officers. We conclude, therefore, that there were *de jure* county offices existing in Douglas county to be filled, and that when filled the officers were, at least, *de facto* officers, and their acts good as to third persons and the public; and that the board of county commissioners of said Douglas county, in issuing the warrants in controversy, constituted a *de facto* board, and the warrants issued by it are *prima facie* valid and binding upon the county. The judgment of the court below is reversed, and the cause remanded for such other and further proceedings as may be taken consistent with this opinion.

BENNETT, J., concurring; KELLAM, P. J., not sitting in the case or taking any part in the decision.