#27976, #27993-r-JMK
**2018 S.D. 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

GARY LIPPOLD and JANE MURPHY,
and THE CITY OF STURGIS, a
South Dakota Municipal Corporation,                    Appellees,

v.

MEADE COUNTY BOARD OF
COMMISSIONERS, ALAN AKER,
ROBERT BERTOLOTTO, ROBERT
HEIDGERKEN, GALEN NEIDERWERDER,
and LINDA RAUSCH,                                      Appellants,

    and

BUFFALO CHIP CAMPGROUND, LLC,           Intervenor and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JEROME A. ECKRICH, III
Retired Judge

\* \* \* \*

MARK F. MARSHALL of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Rapid City, South Dakota                    Attorneys for appellees Gary
                                            Lippold and Jane Murphy.


GREGORY J. BARNIER
Sturgis City Attorney
Sturgis, South Dakota                       Attorney for appellee City of
                                            Sturgis.

\* \* \* \*

ARGUED ON APRIL 25, 2017
OPINION FILED **01/24/18**

JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise,
  Sauck & Hieb, LLP
Aberdeen, South Dakota

Attorneys for appellants Meade County Board of Commissioners, Alan Aker, Robert Bertolotto, Robert Heidgerken, Galen Neiderwerder, & Linda Rausch.


KENT R. HAGG
JOHN STANTON DORSEY of
Whiting, Hagg, Hagg,
  Dorsey & Hagg, LLP
Rapid City, South Dakota

Attorneys for appellant Buffalo Chip Campground, LLC.


THOMAS H. FRIEBERG
Frieberg, Nelson & Ask, LLP
Beresford, South Dakota

Attorneys for amicus South Dakota Municipal League.

KERN, Justice

[¶1.]        The City of Sturgis, Gary Lippold, and Jane Murphy appealed the

order of the Meade County Board of County Commissioners approving incorporation

of the proposed municipality of Buffalo Chip City, South Dakota, and setting an

election for voters to decide whether to assent to incorporation.  The circuit court

denied a request to stay the election.  After the election, the court heard the appeal

pursuant to SDCL 7-8-27 and issued a judgment declaring that the Board's order

was invalid, that the election was a nullity, and that consequently, Buffalo Chip

City was void.  The Board and Buffalo Chip Campground, LLC (Campground), an

intervenor, appeal the circuit court's judgment.  We reverse the circuit court and

vacate its judgment.

## Facts and Procedural History

[¶2.]        This case began with an attempt by area residents affiliated with the

Campground to incorporate a new city in western South Dakota near the city of

Sturgis, home of the famous Sturgis Motorcycle Rally.[1]  This event draws hundreds

of thousands of motorcycle enthusiasts to Sturgis each year and usually occurs

during the first full week of August.  On February 11, 2015, twenty-six Meade

County residents submitted a petition for the municipal incorporation of Buffalo

Chip City to the Board.  They withdrew the petition, however, when they discovered

the boundary for the proposed city was impermissibly close to Sturgis.  SDCL 9-3-

1.1 requires the boundary for a proposed city to be no closer than three miles from

the perimeter of any existing city.

---

1.    Both Sturgis and Buffalo Chip City are located within Meade County.

-1-

[¶3.]     On February 20, 2015, seventeen Meade County residents submitted a new petition for the municipal incorporation of Buffalo Chip City to the Board. The new proposed boundary for Buffalo Chip City was more than three miles away from Sturgis. The petitioners also filed a survey and map of the proposed city, which were verified by an affidavit of the surveyor. Additionally, petitioners filed a census for organization of the new city listing landowners and voters within the proposed territory. The February 20 petition, however, contained a discrepancy between the written legal description of the proposed boundary and the official map depicting the proposed boundary.

[¶4.]     A few hours after the February 20 petition was filed, the Sturgis City Council passed a resolution to annex the Sturgis Municipal Airport, invoking an emergency provision under SDCL 9-19-13 that allowed the resolution to take effect immediately. The council based its use of the emergency provision on the need to preserve the health and welfare of its citizens. On February 23, 2015, Sturgis filed the airport annexation resolution with the Board. However, the Board considered the annexation invalid, concluding that use of the emergency provision was improper and that the filing lacked an accurate map of the annexed territory. Further, the Board determined that the petitions to incorporate Buffalo Chip City had priority because they were filed first. No party, however, has challenged the validity of the annexation in a court of law.

[¶5.]     On February 26, 2015, seventeen Meade County residents filed two documents with the Board: an amended version of the February 20 petition and a "new" petition for incorporation of Buffalo Chip City. The petitioners corrected the discrepancy between the description and the map in both petitions. On February

27, 2015, the Board held a public hearing and spent several hours listening to testimony and discussing the petitions. Concluding the petitioners had satisfied the requirements of SDCL chapter 9-3, the Board voted 3–2 to grant the amended petition. Specifically, the Board found that the proposed area of incorporation had more than thirty[2] voters as required by SDCL 9-3-1 and that more than a quarter of the voters signed the amended petition in satisfaction of SDCL 9-3-5. Pursuant to SDCL 9-3-6, the Board ordered the incorporation of Buffalo Chip City and scheduled an election on May 7, 2015, for voters to decide whether to assent to incorporation. Petitioners withdrew the "new" petition in light of the fact that the Board granted the amended petition.

[¶6.] On March 27, 2015, Lippold, Murphy, and several other Meade County residents asked the Meade County State's Attorney to appeal the Board's decision ordering the incorporation of Buffalo Chip City and setting an election on the matter. The Meade County State's Attorney declined to appeal.

[¶7.] On March 31, 2015, Lippold and Murphy appealed the Board's order to the circuit court as persons aggrieved by the Board's decision under SDCL 7-8-27. Sturgis also appealed the decision. On April 20, 2015, the Campground moved to intervene.[3] Shortly thereafter, the circuit court consolidated the cases.

[¶8.] On April 29, 2015, Sturgis filed a motion to stay the election and requested a hearing before the circuit court. On May 1, 2015, the circuit court held a teleconference with Sturgis's attorney and counsel for the Board. The circuit court

---

2. The Legislature amended SDCL 9-3-1 in 2016, increasing the requirement from thirty voters to forty-five. 2016 Sess. Laws ch. 48, § 1.

3. All parties stipulated to the intervention, and on June 10, 2015, the circuit court granted the Campground's motion to intervene.

denied the motion for a stay, believing it could afford complete relief to Sturgis even after the election and formal incorporation of Buffalo Chip City if the Board's decision were later reversed. Sturgis did not cite SDCL 9-3-20 in its motion to stay the election. SDCL 9-3-20 provides that "[t]he regularity of the organization of any acting municipality shall be inquired into only in an action or proceeding instituted by or on behalf of the state."

[¶9.] On May 7, 2015, the election occurred as scheduled, and a majority of the voters chose to incorporate Buffalo Chip City. On May 13, the Board declared Buffalo Chip City formally incorporated pursuant to SDCL 9-3-12. On May 20, the Board filed Buffalo Chip City's Articles of Municipal Incorporation with the South Dakota Secretary of State.

[¶10.] On January 11, 2016, the South Dakota Municipal League moved to intervene in the suit. On March 4, 2016, the circuit court denied the motion but permitted the Municipal League to file an amicus brief.[4]

[¶11.] The Campground moved to dismiss the appeal for a lack of subject-matter jurisdiction, arguing that the Board's order was not an appealable decision and that Sturgis, Lippold, and Murphy lacked standing because they were not persons aggrieved per SDCL 7-8-27. Additionally, the Campground argued they lacked standing because SDCL 9-3-20 provides that only the State of South Dakota or those acting on its behalf may challenge the regularity of the organization of a municipality once it is incorporated. On March 28, 2016, the circuit court denied the motion.

---

4. The Municipal League also filed an amicus brief with this Court in the current appeal.

-4-

[¶12.] Sturgis, Lippold, and Murphy next sought summary judgment on the grounds that the petitioners failed to comply with the requirements of SDCL chapter 9-3. They alleged that none of the residents who signed the petition and none of the voters on the filed census who claimed to be residents actually lived within the boundaries of the proposed city. In response, the Board moved for partial summary judgment, arguing it had no duty to investigate the residency of the individual voters who signed the petitions. The circuit court denied both motions.

[¶13.] On April 6, 2016, James Walczak, Buffalo Chip City's finance officer, filed an affidavit on behalf of Buffalo Chip City seeking a writ of prohibition from this Court. Buffalo Chip City petitioned this Court to prevent the circuit court "from continuing to assert jurisdiction over the subject matter of the action," contending that SDCL 9-3-20 permits only the State or parties on the State's behalf to challenge the regularity of the organization of an acting municipality. On April 12, 2016, this Court issued an order denying the application for writ of prohibition.

[¶14.] On May 11, 2016, the circuit court held a one-day bench trial. Lippold and Walczak testified in addition to Kirk Chaffee, the Meade County Director of Planning, and Fay Bueno, a finance officer for Sturgis. On May 20, the court issued a written opinion, and on August 24, the court issued detailed findings of fact, conclusions of law, and a judgment reversing the Board's February 27, 2015 order incorporating Buffalo Chip City and scheduling an election.

[¶15.] In reversing the Board's decision, the court found serious deficiencies in the filings as well as errors in the Board's procedural process. The court found the "lots" listed as residences on the incorporation documents were mere patches of

dirt, which were unoccupied except during the Sturgis Motorcycle Rally. Further, the court found the amended petition and census for incorporating the proposed Buffalo Chip City was "rife with false information." The court concluded: (1) that the amended petition was not properly filed with the Meade County Auditor; (2) that the area to be incorporated "contained less than one hundred (100) legal residents and contained less than thirty (30) legally registered voters" as required by SDCL 9-3-1; (3) that the amended petition was signed by less than a quarter of the qualified voters as required by SDCL 9-3-5; (4) that petitioners provided legally inadequate notice of the amended petitions for the municipal incorporation of Buffalo Chip City, South Dakota, and supporting documents before the February 27, 2015 meeting date; (5) that the Board did not provide adequate legal notice of its intent to consider the amended petition for municipal incorporation at its special meeting on February 27, 2015; and (6) that the amended petition and census were inaccurate, contained false information, and failed to comply with the requirements of SDCL chapter 9-3. As part of the August 24, 2016 judgment, the circuit court declared the Board's February 27, 2015 decision a nullity and ordered that "all actions o[f] any kind or character undertaken by the Town of Buffalo Chip, SD are void ab initio."

[¶16.] The Board and the Campground (Appellants) appealed the circuit court's judgment, raising multiple issues for review. Additionally, Sturgis, Lippold, and Murphy (Appellees) raised two issues by notice of review. However, we need only address whether the court possessed subject-matter jurisdiction because that issue is dispositive of the case.

**Analysis and Decision**

-6-

[¶17.] "Subject matter jurisdiction is the power of a court to act such that without subject matter jurisdiction any resulting judgment or order is void." *Cable v. Union Cty. Bd. of Cty. Comm'rs*, 2009 S.D. 59, ¶ 20, 769 N.W.2d 817, 825. "Subject matter jurisdiction is conferred solely by constitutional or statutory provisions." *Lake Hendricks Improvement Ass'n v. Brookings Cty. Planning & Zoning Comm'n*, 2016 S.D. 48, ¶ 15, 882 N.W.2d 307, 312. "Furthermore, subject matter jurisdiction can neither be conferred on a court, nor denied to a court by the acts of the parties or the procedures they employ." *Cable*, 2009 S.D. 59, ¶ 20, 769 N.W.2d at 825. "The test for determining jurisdiction is ordinarily the nature of the case, as made by the complaint, and the relief sought." *State v. Phipps*, 406 N.W.2d 146, 148 (S.D. 1987).

[¶18.] Relevant to the existence of subject-matter jurisdiction is the doctrine of standing. A litigant must have standing in order to bring a claim in court. *Cable*, 2009 S.D. 59, ¶ 21, 769 N.W.2d at 825-26. Although standing is distinct from subject-matter jurisdiction, a circuit court may not exercise its subject-matter jurisdiction unless the parties have standing. *See Lake Hendricks Improvement Ass'n*, 2016 S.D. 48, ¶ 19, 882 N.W.2d at 313.

[¶19.] SDCL 9-3-20 is broadly written and provides that "[t]he regularity of the organization of any acting municipality shall be inquired into only in an action or proceeding instituted *by or on behalf of the [S]tate*." (Emphasis added.) Appellees assert that SDCL 9-3-20 is merely a personal defense for a municipality in a lawsuit. However, they cite no authority supporting this proposition, and the text of the statute does not conform to such a narrow reading. Rather, SDCL 9-3-20 bars standing to all parties other than the State or persons acting on the State's

behalf in any action or proceeding inquiring into the regularity of the organization of any acting municipality.

[¶20.] In their notice of appeal filed with the circuit court, Appellees directly challenged the legality of the Board's decision to order incorporation of Buffalo Chip City. Their proceeding was not "instituted by or on behalf of the state," as the State has taken no role in this litigation. Once Buffalo Chip City became an acting municipality—after voters assented to the Board's incorporation order—SDCL 9-3-20 deprived Appellees of standing, and the circuit court lost jurisdiction to hear the appeal.

[¶21.] This conclusion is supported by common-law precepts regarding de facto corporations, by our precedent, and by precedent from other jurisdictions. It is well established that

> [a]n inquiry into the legal existence of a municipality is in general reserved to the state in a proceeding by quo warranto or other direct proceeding. With few exceptions, a private person cannot ordinarily, either directly or indirectly, usurp this function of government. Private individuals, as taxpayers or otherwise, cannot maintain an action challenging the legality of a municipal corporation nor can they collaterally attack its existence where *it is at least a de facto corporation.*

1 Eugene McQuillin, *The Law of Municipal Corporations* § 3:107 (3d ed.), Westlaw (database updated July 2017) (emphasis added). *De facto* means "[a]ctual; existing in fact; having effect even though not formally or legally recognized." *Black's Law Dictionary* (10th ed. 2014). A *de facto corporation* is "one so defectively created as not to be a de jure corporation, but nevertheless the result of a bona [fide] attempt to incorporate under existing statutory authority, coupled with the exercise of corporate powers, and recognized by the courts as such on the ground of public policy in all proceedings except a direct attack by the state questioning its corporate

existence."  1 McQuillin, *supra*, § 3.103.  A *de jure corporation* stands in contrast to a de facto corporation and is "[a] corporation formed in accordance with all applicable laws and recognized as a corporation for liability purposes."  *Black's Law Dictionary* (10th ed. 2014).

[¶22.]     We acknowledged the distinction between de facto and de jure organizations and the general inability of the public to challenge the existence of a de facto organization in *Merchants' National Bank v. McKinney*, 2 S.D. 106, 48 N.W. 841 (1891).  In *McKinney*, we addressed whether certain warrants issued by Douglas County and sold to individuals were valid, which required "us to determine the validity of the organization of said Douglas [C]ounty."  *Id.* at 112, 48 N.W. at 842.  Douglas County was "unorganized until the spring of 1881, when a petition purporting to be signed by the voters of said Douglas [C]ounty" was presented to the governor of the Dakota Territory.  *Id.* at 113, 48 N.W. at 842.  The petition failed to comply with the requirements for county incorporation, but "[t]he governor, without any knowledge . . . that said petition was not what it purported to be" appointed several county commissioners.  *Id.*  Douglas County became an acting but "illegal organization" that "fraudulently issued" warrants, which were eventually sold to the aggrieved plaintiffs.  *Id.* at 114, 48 N.W. at 843.

[¶23.]     The territorial code at the time, Chapter 21, Code 1877, governed county organization and stated in relevant part:

> Section 1.    Whenever the voters of any unorganized county in this territory shall be equal to fifty or upwards, and they shall desire to have said county organized, *they may petition the governor*, setting forth that they have the requisite number of voters to form a county organization, and request him to appoint the officers specified in the next section of this act.
>
> Section 2.    Whenever the voters of any unorganized county in the territory shall petition the governor, as provided in the

preceding section, and *the said governor shall be satisfied that such county has fifty legal voters*, it shall be the duty of the governor, and he is hereby authorized, to appoint three persons, residents thereof, county commissioners for such county[.]

(Emphasis added.) Under the statute and the governor's action, Douglas County became a "*de facto* organization." *McKinney*, 2 S.D. at 118, 48 N.W. at 844. We explained why Douglas County, as a de facto organization, could not be collaterally attacked:

> The legislature evidently intended to vest in the executive authority to organize new counties, and, to prevent questions involving the legality of such organizations being raised in a collateral proceeding, it intended to make his decision so far conclusive as to make such an organization at least a de facto organization. *It cannot be presumed that the legislature intended to leave so important a matter as the organization of a new county, as respects the public and third persons, to be determined by the courts, years perhaps after the organization of such county, and when important rights have been acquired under such organization.* Can the public be expected to re-examine the proceedings of the governor, ascertain whether or not the signatures to the petition are genuine, take a census of the county, and ascertain, at its peril, whether or not there actually existed the required number of voters in the county to authorize the governor to organize it, before it can transact business with the county officers of such county? Should the public be required to look further than to see that a county organization actually exists, with officers performing the duties usually performed by county officers of a county? We think not.

*Id.* at 116-17, 48 N.W. at 844 (emphasis added). Accordingly, we concluded that the Douglas County Commissioners "constituted a *de facto* board" and that the warrants they issued were "*prima facie* valid and binding upon the county." *Id.* at 846.

[¶24.] While we decided *McKinney* based on the common law, SDCL 9-3-20 is a statute enacted by the Legislature. "In applying legislative enactments, we must accept them as written. The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said." *In*

*re Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D. 1984). SDCL 9-3-20 only permits the State or a person acting on the State's behalf to inquire into the regularity of the organization of any acting municipality, and we will adhere to the Legislature's command.

[¶25.] Further, the facts and legal issues in *McKinney* are substantively similar to the Buffalo Chip City conundrum. The Legislature delegated the authority to order the incorporation of proposed municipalities to the Board. Petitioners sought to incorporate Buffalo Chip City. The Board found the petitioners satisfied the statutory requirements, and the Board ordered incorporation and set an election for voters to assent to or reject incorporation. The voters assented and Buffalo Chip City became an acting municipality. Because it was at least a de facto corporation, its status and actions were "good as to the public and third persons." *McKinney*, 2 S.D. at 115, 48 N.W.2d at 843. If the circuit court had stayed the election, Buffalo Chip City would not have become an acting municipality before the court decided the case. But Buffalo Chip City became and still is an acting municipality. The evidence established at trial reveals Buffalo Chip City is governed by an acting board of sworn trustees and is engaging in acts of a municipality, including taking out loans and obtaining licenses and sales-tax exemptions. It is at the very least a de facto corporation, and Appellees are barred from seeking relief under both *McKinney*[5] and SDCL 9-3-20.

---

5. We have since affirmed *McKinney* in the context of de facto officers. *State v. Escalante*, 458 N.W.2d 787 (S.D. 1990); *State v. Smejkal*, 395 N.W.2d 588 (S.D. 1986).

[¶26.] Additionally, many courts have reached the same conclusion that the validity of acting municipalities may only be challenged by the state. *See, e.g.*, *Tulare Irrigation Dist. v. Shepard*, 185 U.S. 1, 14, 22 S. Ct. 531, 536, 46 L. Ed. 773 (1902); *Nat'l Life Ins. Co. of Montpelier v. Bd. of Educ. of City of Huron*, 62 F. 778, 787 (8th Cir. 1894); *Jefferson v. State*, 527 P.2d 37, 41 (Alaska 1974); *Stroiney v. Crescent Lake Tax Dist.*, 533 A.2d 208, 210 (Conn. 1987); *Bishop v. Shawnee & Mission Twps. Turkey Creek Main Sewer Dist. No. 1, Johnson Cty.*, 336 P.2d 815, 818 (Kan. 1959); *State v. Bailey*, 118 N.W. 676, 677-78 (Minn. 1908). Here, it is undisputed that Buffalo Chip City is an acting municipality and that Sturgis, Lippold, and Murphy are not appealing on behalf of the State of South Dakota. Because the appeal from the County's decision inquired into the regularity of the organization of Buffalo Chip City, SDCL 9-3-20 deprived Appellees of standing and thus the circuit court of subject-matter jurisdiction.

[¶27.] Citing our denial of Appellants' writ of prohibition, Appellees respond that even if SDCL 9-3-20 applies, res judicata bars its application.[6] While acknowledging that "[a] writ of prohibition cannot be invoked merely as a substitute

---

6. Appellees also argue that this case is not an inquiry into the regularity of the organization of Buffalo Chip City. Appellees observe that although "the ghost of the town of Buffalo Chip haunts this case, the putative municipality is not a party to this action." They contend that while SDCL 9-3-20 might provide a defense for a municipality under scrutiny, here, only the decision of the Board is being challenged. However, the circuit court's decision necessarily involved an inquiry into the regularity of the organization of a municipality, and the remedy it granted declared the incorporation of Buffalo Chip City void ab initio. Further, we recently stated that, at least in cases involving quasi-judicial decisions, "[a]ppeals involving county commissioner decisions should be taken in the names of the parties whose interests are at stake." *Surat Farms, LLC v. Brule Cty. Bd. of Comm'rs*, 2017 S.D. 52, ¶ 8 n.2, 901 N.W.2d 365, 368 n.2. If Buffalo Chip City should have been named in the action, it is through no fault of its own that it was not.

for an appeal," *S.D. Bd. of Regents v. Heege*, 428 N.W.2d 535, 538 (S.D. 1988), Appellees observe that prohibition will lie due to a lack of subject-matter jurisdiction, *see Nelson v. Dickenson*, 64 S.D. 456, 459, 268 N.W. 103, 104 (1936). Because we denied Buffalo Chip City's application for a writ of prohibition, Appellees claim we conclusively determined the circuit court possessed subject-matter jurisdiction despite SDCL 9-3-20.

[¶28.] However, res judicata does not bar Appellants' argument that SDCL 9-3-20 deprived the circuit court of jurisdiction. The doctrine of res judicata bars an issue from being relitigated when four elements are satisfied:

> (1) a final judgment on the merits in an earlier action; (2) the question decided in the former action is the same as the one decided in the present action; (3) the parties are the same; and (4) there was a full and fair opportunity to litigate the issues in the prior proceeding.

*Farmer v. S.D. Dep't of Revenue & Regulation*, 2010 S.D. 35, ¶ 9, 781 N.W.2d 655, 659. We construe "the doctrine liberally, unrestricted by technicalities." *Id.* ¶ 7. "However, because the doctrine bars any subsequent litigation, it should not be used to defeat the ends of justice." *Id.* "A writ of prohibition is an extraordinary remedy." *Cummings v. Mickelson*, 495 N.W.2d 493, 495 (S.D. 1993). Other courts have stated that generally, an unwritten denial of an application for a writ of prohibition does not constitute a decision on the merits. *E.g.*, *Kowis v. Howard*, 838 P.2d 250, 253-54 (Cal. 1992) (en banc); *Topps v. State*, 865 So. 2d 1253, 1258 (Fla. 2004); *State ex rel. Albert v. Adams*, 540 S.W.2d 26, 30 (Mo. 1976) (en banc); *Kennecott Copper Corp. v. Salt Lake Cty.*, 575 P.2d 705, 708 (Utah 1978).

[¶29.] Our order denying Buffalo Chip City's application stated we "considered the application and [were] fully advised in the premises[.]" But a short statement summarily denying an application does not give the denial preclusive

effect. *See Kowis*, 838 P.2d at 253. "There are many reasons why [this] [C]ourt might have acted as it did," *Adams*, 540 S.W.2d at 30, and "extraordinary writs may be denied for numerous and a variety of reasons, some of which may not be based upon the merits of the petition," *Topps*, 865 So. 2d at 1257. Therefore, res judicata does not prevent us from addressing whether SDCL 9-3-20 deprived Appellees of standing and thus the circuit court of subject-matter jurisdiction.

[¶30.] The circuit court erred in denying the motion to dismiss pursuant to SDCL 9-3-20. In denying Sturgis's April 29, 2015 motion to stay, the court believed it could still afford complete relief to the parties even if the election occurred. However, once the voters decided to incorporate Buffalo Chip City, it became at the very least a de facto corporation. At that point, the court lost subject-matter jurisdiction. A lack of subject-matter jurisdiction extinguishes appellate review, and we are constrained—irrespective of the merits of Appellees' arguments about the invalidity of Buffalo Chip City's incorporation—to reverse.

## Conclusion

[¶31.] Buffalo Chip City operates at minimum as a de facto corporation, and SDCL 9-3-20 requires that any action challenging its incorporation be brought by the State. Because Appellees did not bring their suit on behalf of the State, the circuit court lacked subject-matter jurisdiction. We reverse and vacate the circuit court's judgment.

[¶32.] GILBERTSON, Chief Justice, SEVERSON, Justice, and WILBUR and MEIERHENRY, Retired Justices, concur.

[¶33.] MEIERHENRY, Retired Justice, sitting for ZINTER, Justice, disqualified.

-14-

[¶34.] JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.