## IN RE LAWRENCE BRAINERD.

*Habeas Corpus.   Insolvent Law.   R. L. ss.* 1794, 1839.

A debtor, imprisoned on a warrant issued by the Court of Insolvency, is enti -
tled to be discharged on *habeas corpus,* when it appeared by the return
that the debtor was committed to jail because he refused to submit to
an examination on oath upon matters relating to his trades, dealings,
the disposal of his estate, etc., and to surrender his books to a messen-
ger, when it did not appear, that an assignee or a messenger had been
legally appointed; or, that the relator had been declared an insolvent
debtor; and his rights are to be determined by the return.

HABEAS CORPUS.   Heard before ROYCE, Ch. J., who delivered
the following opinion :

The relator, in the complaint upon which this writ issued,
alleged that he was imprisoned in the county jail in St. Albans
and restrained of his liberty by Julius Halbert, the sheriff of the
county of Franklin, and prayed that a writ of *habeas corpus*
directed to the said Halbert might issue requiring him to show
cause why the relator was so by him imprisoned and restrained
of his liberty.   Said Halbert made his return upon said writ, in
which he attempted to justify the imprisonment of the relator by
virtue of the warrant, which is made a part of the return, issued
by the judge of the Court of Insolvency for the district of
Franklin; and the question presented, is, whether that warrant
furnished a legal justification for the imprisonment of the relator
and depriving him of his liberty.   If the warrant was void on
account of a want of power in the judge of the Court of Insol-
vency to issue it, the justification fails.

It will be seen, by reference to the warrant, that the relator
was ordered by the judge of the Court of Insolvency to submit
to an examination on oath before said judge upon matters relat-
ing to the disposal of his estate, his trades and dealings with
others, and his accounts concerning the same, to debts due and

claimed by him to be due, and to other matters concerning his estate; and that it was upon his refusal to comply with said order and to submit to such an examination that the warrant directing that he be committed to the keeper of the jail was issued.

When the right of a citizen to his liberty is brought in question, no intendment or presumption is to be made in favor of the legality of the process under which he has been deprived of his liberty; and the rights of the relator are to be determined by the return. Hurd Hab. Cor. 332.

The fifth amendment of the constitution of the United States declares that no person shall be deprived of life, liberty or property, without due process of law; and the constitution of this State, in Article 10, that no person can be justly deprived of his liberty except by the laws of the land or the judgment of his peers. The process of law under which the relator was deprived of his liberty emanated from the judge of the Court of Insolvency; and the first question is, had the judge of that court any power or authority to issue it? If he had such power, it must be under sec. 1839, R. L. That section provides that the debtor shall at all times before the granting of his certificate of discharge, upon reasonable notice, attend and submit to an examination on oath before the judge *and assignee,* relating to his estate and the settlement thereof, as specified in the section. No power is given to the judge to proceed with such an examination except before himself and the assignee; hence, no such examination could be required until an assignee had been appointed; and the words, "all times," must be construed as referring to times after an assignee had been appointed who could be present. That this is the proper construction is evident when we come to consider the purpose of conferring the power and the expected benefits to result from its exercise. The object to be accomplished, is, to aid the assignee in discovering the property of the insolvent debtor,—to accomplish in this summary and speedy manner what before the conferring of this power could only be accomplished by a bill in equity praying for a discovery;

*In re* Brainard.

so it was eminently fit· and proper to provide that any such examination should be conducted before the assignee as well as the judge. There would seem to be no necessity for any such examination until some person had been appointed, charged with the duty to look up and get in the estate of · the debtor. It not appearing in the return that any assignee had been appointed, the order for the examination of the relator was premature, was made without authority and consequently void.

It does not appear by the return that the relator had been adjudged an insolvent debtor. This was indispensably necessary to give the judge such jurisdiction over his person and estate as to entitle him to make any such order.

One reason for making the order, as stated in the return, was the refusal of the relator to deliver his books and papers to the messenger appointed in the cause. He might lawfully refuse to comply with any such demand, unless the messenger making it had been legally appointed, so as to be a messenger both *de facto* and *de jure*. It does not appear by the return, that the messenger was legally appointed, or that he was even a messenger *de facto* at the time the demand was made. The right of the judge of a Court of Insolvency to appoint a messenger is conferred by sec. 1794, R. L., which provides that when the judge, upon application therefor by a party interested, decides that the interest of the estate so requires, he may appoint, etc. The judge is required to determine judicially, before making such an appointment, that a proper application has been made, and that the interests of the estate require the appointment; and, inasmuch as an adjudication upon these questions was necessary before exercising the right of appointment, it should appear that they were judicially decided ; and the legality of the appointment is dependent upon their having been so decided. Until that did appear, the messenger had no right to act as such, and the judge had no power to issue his warrant directing the imprisonment of the relator for refusal to comply with the demand made by the messenger.

The case of *Kimball et al.* v. *Morris et al.* 2 Met. 572, arose

32

*In re* Brainard.

under the insolvent laws of Massachusetts, and presented the question of the necessity for such preliminary findings by the judge before the issue of a warrant for arrest; and it was decided that they were necessary. The provisions of the insolvent law of that State under which the question arose are nearly identical with our law relating to the same subject.

There can be no doubt that the legality of the relator's imprisonment is properly triable under this writ. It was designed for such purposes, and has been so used ever since *Magna Charta*. It has been designated as the key in the hands of the court with which to unlock prison doors and let those who are illegally confined therein go free. It is allowable as a constitutional right to all persons, irrespective of rank or condition in life or the character of the offense with which they are charged. It is not for this court to say whether the relator acted wisely in refusing to comply with the order made by the judge of the Court of Insolvency. It is our duty to administer the law as we find it; and when the relator invokes the aid of the court in obtaining his release from an imprisonment which is shown to be unlawful, he is entitled to the benefit of all and the same rules of law in the consideration and disposition of his case that is and should be accorded to every other citizen.

The arrest and imprisonment of the relator were illegal, and it is ordered that he be discharged.