Yorty vs. Paine and others.

YORTY vs. PAINE and others.

*December 22, 1884 — January 13, 1885.*

*(1) Construction of statutes: Delay in publication: Towns: Officers de facto. (2) Tax deed: Acknowledgment: Mistake in date.*

1. Ch. 241, Laws of 1876 (approved March 10, 1876), provided that certain territory "shall constitute and be known as the town of Pine River;" that the electors of said town "shall meet . . . *on the first Tuesday of April next*" and elect town officers; and that after the officers so elected shall have qualified the town shall be deemed to be duly organized. The act was not published until April 8, 1876. On the first Tuesday in April (April 4), however, town officers were elected, who qualified and acted as such during the ensuing year. *Held*, that the manifest intention of the legislature to create the town when the act took effect by publication should not be defeated by the delay in the publication until after the time fixed for the election. After April 8, therefore, the town had a legal existence and the officers previously elected were its officers *de facto*, and their subsequent acts as such in the assessment and collection of taxes were valid and binding.

2. A tax deed was executed February 5, 1881, but the certificate of acknowledgment purported to bear date February 5, 1880. *Held*, that the mistake in the date of the certificate did not invalidate the deed, nor was the acknowledgment so defective as to prevent the deed from being lawfully recorded.

APPEAL from the Circuit Court for *Lincoln* County.

In addition to the facts stated in the opinion it appears that one of the tax deeds under which the defendant claimed was executed and bore date February 5, 1881, but the certificate of acknowledgment read as follows: "On this 5th day of February, one thousand eight hundred and eighty, came before me Herman Rush, county clerk," etc.

*Charles W. Felker*, for the appellants.

For the respondent there were briefs by *S. T. Conlee*, attorney, and *George W. Burnell*, of counsel, and oral argument by *Mr. Conlee.*

TAYLOR, J. This is an action of ejectment, to recover the possession of certain lands described in the complaint. The appellants and defendants claimed title to the lands by virtue of certain tax deeds issued by the county of Lincoln for the nonpayment of taxes assessed thereon in the year 1876. On the trial, the learned circuit judge directed a verdict in favor of the plaintiff, to which direction the appellants duly excepted, and allege such direction as error.

The evidence showed title in the plaintiff, derived from the government; and he was entitled to a verdict, unless the tax deeds issued to the defendants were valid deeds, or the statute of limitations had run in their favor. The learned circuit judge held the tax deeds void, and that the statute of limitations had not and could not run in their favor. This decision of the learned circuit judge was undoubtedly based upon the construction which should be given to ch. 241, Laws of 1876. The lands in controversy are situate in the town of Pine River, as described and bounded in said ch. 241. This act was not published until the 8th day of April, 1876, and could not, therefore, take effect until that day. On the 4th day of April, 1876, and before the publication of the act, the people of said town held a town meeting (undoubtedly then supposing said act to be in force) and elected a full set of town officers. The officers so elected qualified after the act took effect, and thereafter performed all the duties of town officers for said town until their successors were elected at the next annual town meeting; and said town of Pine River has continued to act as an organized town from April 8, 1876, to the present time. The officers elected April 4, 1876, made the assessment and levied the taxes in said town for that year; and because such taxes so assessed and levied were not paid, the lands upon which they were levied were returned delinquent and sold by the county treasurer of the county of Lincoln, and upon such sale the deeds under which the defendants claim title were issued by the proper county officers.

In the opinion of the learned circuit judge, there was no town of Pine River in existence until after the election of town officers in April, 1877, and therefore there were no officers in existence, either *de facto* or *de jure*, who had any authority to levy or collect the taxes in question, and the tax deeds issued upon the sales made by the county treasurer were utterly void, and the statute of limitations did not run in their favor, as was held by this court in the case of *Smith v. Sherry*, 54 Wis. 114.

After a careful reading of ch. 241, Laws of 1876, we have come to the conclusion that the learned circuit judge erred in its construction, and that, giving it the construction which its language naturally imports, and which is in evident harmony with the intent of the legislature which passed it, the town of Pine River, as well as the other towns mentioned and described in said act, became a town in fact, immediately after the act took effect, viz., on the 8th day of April, 1876.

The title of the act is, "An act to attach Lincoln county to the Eighth congressional district, and to organize and define the boundaries of certain towns therein." Sec. 1 is as follows: "The county of Lincoln is hereby attached to and shall hereafter form a part of the Eighth congressional district." Secs. 2, 3, and 4 define the boundaries of the towns of Corning, Pine River, and Jenny. Sec. 2 is in the following words: "All that territory embraced within the following limits, to wit [here follows a description of the territory], shall constitute and be known as the town of Corning." Sec. 3: "All that territory embraced within the following boundaries, to wit [here follows a description of the territory] shall constitute and be known as the town of Pine River." Sec. 4: "The balance of the territory of the county of Lincoln, not embraced in the above-mentioned towns of Corning and Pine River, shall hereafter constitute and be known as the town of Jenny. The county board of supervisors shall not have power to change the boundaries

of said towns, or any of them, for three years next after the passage of this act." Sec. 5: "The qualified electors of the town of Corning shall meet at the house of Jacob Webber, in said town, on the first Tuesday of April next, and shall elect the various town officers as now prescribed by law." Secs. 6 and 7 provide for the election of town officers for the towns of Pine River and Jenny on the first Tuesday of April next, using the same language as in sec. 5. Sec. 8 reads as follows: "After the several elections shall have been held, as provided by this act, and the officers that may be elected thereat shall have duly qualified according to law, the several towns above mentioned shall be deemed to be duly organized, and shall possess all the rights and privileges of other towns of this state." Sec. 9: "This act shall take effect and be in force from and after its passage and publication."

The act was approved by the governor on the 10th of March, 1876, but was not published until the 8th day of April, 1876, and, as a consequence, did not take effect as a law until that date. As stated above, notwithstanding the act was not published, town officers were elected on the first Tuesday of April next after its passage, viz., April 4, 1876, and the officers so elected qualified and acted as officers for the several towns in said county for the year 1876.

It is insisted by the learned counsel for the appellants that the officers so elected and serving in said town, although elected without authority of law, were in office by color of an election, and are, therefore, officers *de facto* if not *de jure*, and as to the public their acts are as binding as though they had been legally elected. This proposition is well settled and abundantly supported by the decisions of this court, if it be admitted that the town of Pine River existed as a town after the publication of this act, April 8, 1876, so that the town offices were created by the act, and might be filled by officers duly appointed or elected.

The important question in this case is, therefore, whether the act above quoted, when it took effect by its publication, created the town of Pine River, as well as the other towns mentioned, and so created town offices, to be filled by town officers, or whether these towns were only created after a lawful election of town officers was had in said towns.  On the part of the respondent it is claimed that as the act did not take effect until it was published, it must be construed with reference to that fact and from that point of time; and that secs. 5, 6, and 7 of the act, which provide for the election of town officers, read with reference to the date of publication, fix the day of election on the first Tuesday of April, 1877, instead of 1876.  He also insists that it is clear, from the reading of sec. 8 of the act, that the legislature did not intend, so far as the act created new towns in the county of Lincoln, that it should have any effect until the officers of the towns were elected as provided in the act.  Under this construction of the act there was no town of Pine River in the county of Lincoln in 1876, consequently there were no town offices of such town to be filled by officers either *de facto* or *de jure*, and all taxes assessed and levied by any pretended officers of said town were simply void, and the attempts to assess and levy the same were mere acts of usurpation, having no binding effect upon any one.  The conclusion drawn by the learned counsel for the respondent upon his construction of the act is, undoubtedly, logical.

After carefully considering the forcible argument of the learned counsel for the respondent made in support of his construction of the act, we are not convinced of its correctness, and are clear that it is in direct conflict with the intent of the legislature, and with the meaning of the language used in the act.  The language of secs. 2, 3, and 4 is clear and positive that certain territory described shall constitute certain towns in the county of Lincoln, and the first section makes the county a part of the Eighth congressional district.

If the act had stopped at the end of the fourth section, there could be no doubt that when the act was published the respective territories would have constituted so many towns, and they would have been officered in the manner provided by the general laws of the state; and, in such case, if the law ·did not take effect until after the town meeting in April of the year in which the act was passed, no election for town officers would be had until the general town meeting on the first Tuesday of April next thereafter (1 Tay. Stats. 355, §§ 34, 35), a result which the learned counsel for the respondent insists that the provisions of ch. 241, Laws of 1876, have brought about.

We think it is very clear, from the language of the act itself, that the legislature did not intend to have the first election of the town officers depend upon the provisions of the general law upon the subject. This intention is evident from the fact that in secs. 5, 6, and 7 of the chapter it is prescribed that the first town meeting shall be held, not on the first Tuesday of April next after the act takes effect, but on the first Tuesday of April next; and it is clear to us that by the first Tuesday of April next was meant next after the passage of the act. The date of its passage being March 10, 1876, there was ample time for its publication before that day, and it was not contemplated by the legislature that it would not be published until after that date. An examination of the volume of laws for 1876 shows that very many of the acts passed at that session were published within a much shorter period of time after their approval by the governor than elapsed between March 10th and the first Tuesday in April thereafter. We think it quite clear, therefore, that the legislature intended that the act should effect the establishment of the towns therein designated when published, and had the law been published before April 4, 1876, the officers would have been lawfully elected

on that day.   Upon the question of the intent of the legis-
lature to create the town of Pine River as a town in the
county of Lincoln upon the publication of ch. 241, Laws of
1876, and of its existence as a town previous to the first
Tuesday of April, 1877, ch. 50, Laws of 1877, published on
the 4th day of February, 1877, is almost conclusive.   This
act is a legislative recognition of the existence of such town.

The fact that it was not published until it was too late to
hold an election at the time prescribed by the act, cannot
defeat the intention of the legislature to establish the town
when the act took effect.   It is possible that the inability of
the people of the town to hold a lawful election for town
officers on the day fixed by the act, because the act was not
then in force, would have authorized the electors of the sev-
eral towns to have held an election for town officers under
the provisions of sec. 14, ch. 13, R. S. 1858 (1 Tay. Stats.
355, § 36), which reads as follows:   "If the inhabitants of
any newly-organized town shall fail to hold their first town
meeting on the day specified by law, any three qualified
voters of such town may call a meeting of the electors of
such town for such town election at any time thereafter, by
posting up notices thereof at not less than three public
places in such town, at least ten days previous to the holding
of such meeting."   This was not done, but the officers
elected on the first Tuesday of April qualified and acted.
If the town of Pine River was in existence after the publi-
cation of ch. 241, Laws of 1876, as we think it was, then
these officers became officers *de facto*, and, although elected
without authority of law, their acts bind all parties in all
collateral proceedings.

The cases of *Carleton v. People*, 10 Mich. 250, and *Fowler
v. Bebee*, 9 Mass. 231, were in their circumstances very much
like the case at bar.   In the Michigan case, county officers
had been elected before the law organizing the county took

effect. After the act took effect, the officers so elected assumed to be officers of the county, and the court held they were officers *de facto*, and their acts could not be questioned except by some direct proceeding against them; as to all public matters and as to third parties their acts were lawful. In the Massachusetts case, a sheriff was appointed by the governor for a county which was not organized when the appointment was made, and it was held that, after the county was organized, he having assumed to act as sheriff, his acts were binding as the acts of an officer *de facto*.

Having come to the conclusion that the town of Pine River was, in fact, a town after the act of 1876 took effect by its publication, the decisions of this court are conclusive upon the question of the binding force of the acts of the *de facto* officers of such town. *State ex rel. Knowlton v. Williams*, 5 Wis. 308; *In re Boyle*, 9 Wis. 264; *Dean v. Gleason*, 16 Wis. 1, 18; *State v. Bloom*, 17 Wis. 521; *Laver v. McGlachlin*, 28 Wis. 364; *Cole v. Black River Falls*, 57 Wis. 110, 113, 114; *C. & N. W. R'y Co. v. Langlade Co.* 56 Wis. 614. The evidence in the case shows the existence of the town of Pine River in 1876. It also shows the fact that town officers were, in fact, acting in such town under color of an election, and were, therefore, *de facto* officers. Consequently, their acts in assessing, levying, and collecting taxes in such town cannot be considered mere acts of usurpation, and the tax deeds issued upon the sales of land for the payment of taxes so assessed and levied are not void, but must have the same effect as evidence as any other tax deeds; and, for anything appearing in this case, the statute of limitations would run in their favor under the same condition of things that it would run in favor of any other tax deed.

The apparent mistake in the date of the certificate of the acknowledgment of the deed does not affect the validity of the deed, nor is the acknowledgment so defective in that re-

spect as to prevent the same from being lawfully recorded. *Chase v. Whiting*, 30 Wis. 544.

We think the court erred in directing a verdict for the plaintiff.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.