ST. PAUL GASLIGHT COMPANY v. VILLAGE OF SANDSTONE.

July 2, 1898.

Nos. 11,078—(157).

**Constitution—Laws 1885, c. 145.**

Laws 1885, c. 145, providing for the incorporation of villages, is constitutional.

**Municipal Corporation—Collateral Attack on Corporate Existence.**

Where a municipal corporation is acting under color of law, and exercising all of the functions and powers of a corporation de jure, and the legality of its incorporation has not been questioned by the state, but, on the contrary, it has been recognized as such for some years by the state, neither the municipal corporation nor any private party can question the validity of its corporate existence in a collateral action or proceeding.

**Village Bonds—Laws 1893, c. 200—Recitals—Bona Fide Holder— Fulton v. Town of Riverton Followed.**

The defendant issued its negotiable bonds pursuant to a majority vote of the electors of the village, for the purchase of waterworks for the village, under the provisions of Laws 1893, c. 200. The bonds recited that they were issued under this act, and that all the requirements of the constitution and laws of the state had been fully complied with in the issuance thereof. In fact, the statute had not been complied with, in that the bonds were not advertised for sale and sold at not less than par, but were issued directly to a corporation in payment of a system of waterworks purchased of it for the village. *Held,* following Fulton v. Town of

73 M.—15

Riverton, 42 Minn. 395, that the bonds were valid in the hands of a bona fide holder for value without notice.

**Same—Collateral Security—Plaintiff Corporation a Bona Fide Holder.**
The plaintiff acquired the bonds as collateral security for a loan made by it to a third party, under circumstances which would, if it were an individual, constitute it a bona fide holder of the bonds, but it was not authorized to loan money by its charter. *Held*, that it is a bona fide holder of the bonds.

Appeal by defendant from an order of the district court for Pine county, Williston, J., denying its alternative motion for judgment in its favor notwithstanding the verdict or for a new trial, after the court had directed a verdict in favor of plaintiff. Affirmed.

*Robert C. Saunders*, for appellant.

The bonds in question are void, absolutely so, whether in the hands of the first taker or subsequent purchaser, because the bonds were not advertised for sale, as required by Laws 1893, c. 200, § 5. Nor did the legislature ever authorize the village to buy waterworks and pay its bonds therefor. The statute authorizes bonds to be issued for the purpose of raising money, but does not authorize the exchange of bonds for property at an agreed price. The doctrine of bona fide innocent holder does not enter into this case. There can be no innocent holder of an instrument void ab initio, of an obligation which was never the obligation of the alleged obligor, of a bond which never had a legal inception or beginning, and to which no title whatever could be conferred. That all recitations in municipal bonds, however made or however authorized, are not final and conclusive, has been held in this state. Harrington v. Town of Plainview, 27 Minn. 224; Town of Plainview v. Winona & St. P. R. Co., 36 Minn. 505, 517.

Plaintiff is not a bona fide holder of the bonds in suit because the power to loan its corporate funds and take collateral from the borrower was not conferred on it by statute, and was clearly outside of its powers and duties—an act which it had no right to do, a usurpation of powers with which it is not invested. Plaintiff had actual notice of the invalidity of the bonds at the time it foreclosed its lien, and acquired the absolute title thereto. Again, the undis-

puted testimony shows that, when plaintiff loaned its money, it looked to the borrower for repayment, and relied on his ability to repay, and not on the bonds.

Defendant never existed as a municipal corporation, because Laws 1885, c. 145, under which it attempted to incorporate, is unconstitutional, because it delegates legislative functions to 30 private citizens, and because it contravenes Const. art. 3, distributing the powers of government. The purported incorporation in the case at bar embraced territory of a greater extent and of a different character from that authorized to be incorporated by the statute, in that said territory was neither urban nor suburban in character, nor adjacent to the platted portion of the village.

There is no question of estoppel as between the bondholder and the village. If the bonds are invalid, as insisted by defendant, they cannot be validated by estoppel in favor of any one. If they are valid, plaintiff recovers by virtue of that validity. An ultra vires municipal act, done without legislative authority therefor, is absolutely void, and it makes no difference whether the municipality receives and retains a benefit and consideration for the act or not. Young v. Board of Education, 54 Minn. 385; City of Chaska v. Hedman, 53 Minn. 525.

*Flandrau, Squires & Cutcheon* and *F. B. Tiffany*, for respondent.

The failure of the village to advertise for bids for the bonds before issuing them does not render them invalid in the hands of a bona fide holder, in view of the fact that they were issued directly to the water company for the waterworks. Bernards Tp. v. Stebbins, 109 U. S. 341; Scipio v. Wright, 101 U. S. 665; Montclair v. Ramsdell, 107 U. S. 147.

The loan in question was not ultra vires, so far as plaintiff is concerned. It has the power to accumulate money, and therefore it follows that it had the right, and was in duty bound, to loan the money so accumulated, if a proper loan could be made, rather than allow it to remain idle. Moreover, such an objection, even if the loan had been ultra vires, does not lie in the mouth of appellant. Baker v. Northwestern G. L. Co., 36 Minn. 185; St. Paul Land Co. v. Dayton, 37 Minn. 364; National Bank v. Matthews, 98 U. S. 621;

National Bank v. Whitney, 103 U. S. 99; Fortier v. New Orleans Nat. Bank, 112 U. S. 439.

The question in this case is not whether respondent knew of the invalidity of the bonds at the time it bought them at the foreclosure sale, but whether it had any such knowledge when it made the loan. If, while it held the bonds as collateral simply, it was protected by the rule of bona fides, that protection extends to the present ownership. Simonton, Mun. Bonds, § 116; Rosemond v. Graham, 54 Minn. 323; Haugan v. Sunwall, 60 Minn. 367.

Municipal bonds are absolutely void only in the following cases: (1) When issued without the authority of any law authorizing the issuance of any such bonds. (2) When all statutes supposed to confer authority for their issuance are unconstitutional. (3) When the municipality has never in fact in any way authorized the issuance of any such bonds. (4) When the law authorizing the issuance of such bonds imposes certain conditions upon the exercise of the power by the municipality, and expressly provides a record other than the recitals contained in the bonds themselves, from which it may be determined whether the conditions thus imposed have been complied with, and the conditions have not in fact been complied with, as will be disclosed by referring to the record provided for in the statute. It is not claimed by appellant that the bonds under discussion fall into any one of these classifications. This being true, the recitals in the bonds as to compliance with legislative requirements are conclusive. Fulton v. Town of Riverton, 42 Minn. 395; Board of Commrs. v. Aspinwall, 21 How. 539; Town of Coloma v. Eaves, 92 U. S. 484; Bissell v. City of Jeffersonville, 24 How. 287; Bernards Tp. v. Morrison, 133 U. S. 523; National L. Ins. Co. v. Board of Education, 10 C. C. A. 637; Oregon v. Jennings, 119 U. S. 74. As to irregular elections, see Board of Commrs. v. Aspinwall, supra; Humboldt Tp. v. Long, 92 U. S. 642; Coler v. Rhoda, 6 S. D. 640; Pana v. Bowler, 107 U. S. 529. As to failure to advertise, see Oregon v. Jennings, supra; National L. Ins. Co. v. Board of Education, supra. As to exchange for property, instead of sale for cash, see Bernards Tp. v. Stebbins, 109 U. S. 341; Scipio v. Wright, 101 U. S. 665; Montclair v. Ramsdell, 107 U. S. 147; People v. Mead, 24 N. Y. 114. As to sales for less than par,

see Simohton, Mun. Bonds, §§ 50, 146, 147; Woods v. Lawrence Co., 1 Black, 386; Mercer Co. v. Hacket, 1 Wall. 83; Sherman Co. v. Simons, 109 U. S. 735; Delafield v. State, 26 Wend. 192; Atchison v. Butcher, 3 Kan. 104; County v. North-Western, 32 Pa. St. 144; Appeal of Whelen, 108 Pa. St. 162. See also Marcy v. Tp. of Oswego, 92 U. S. 637; New Providence v. Halsey, 117 U. S. 336; Chaffee v. Potter, 142 U. S. 355; Sutliff v. Lake County Commrs., 147 U. S. 230; Mutual v. Elizabeth, 42 N. J. L. 235; Cotton v. Inhabitants, 47 N. J. L. 401.

That Laws 1885, c. 145, relating to the incorporation of villages, is not unconstitutional on the ground that it delegates legislative functions, was determined in State v. Minnetonka Village, 57 Minn. 526. State v. Village of Fridley Park, 61 Minn. 146.

Conceding that appellant village comprises land of a different character and greater in extent than the act authorizes, and that the validity of its incorporation might be successfully attacked in a direct proceeding by the state, nevertheless appellant is estopped in this action to deny its corporate existence. 1 Dillon, Mun. Corp. (4th Ed.) § 43a; 15 Am. & Eng. Enc. 964, 965; Aller v. Town of Cameron, 3 Dillon, 198; National L. Ins. Co. v. Board of Education, supra; President v. Thompson, 20 Ill. 197; Town v. Cole, 61 Ill. 397; Louisville v. Shires, 108 Ill. 617; School v. School, 135 Ill. 464; Bushnell v. Consolidated, 138 Ill. 73; Mendenhall v. Burton, 42 Kan. 570; Board v. Shields, 62 Mo. 247; Worley v. Harris, 82 Ind. 493; Stuart v. School, 30 Mich. 69; Tisdale v. President, 46 Ill. 9; Kettering v. Jacksonville, 50 Ill. 39; Inhabitants v. Fox, 84 Mo. 59; State v. Fuller, 96 Mo. 165.

Appellant, by its acceptance and conversion of the consideration given for these bonds, and by its payment of interest upon them, has estopped itself to deny their validity. State v. Van Horne, 7 Oh. St. 327; Hannibal v. Marion, 36 Mo. 295; Barrett v. County, 44 Mo. 197; Leavenworth v. Commissioners, 18 Kan. 169; Brown v. Milliken, 42 Kan. 769; Town v. Park, 50 Vt. 178; Town v. Becker, 123 N. Y. 161; Munson v. Town of Lyons, 12 Blatchf. 539; Whiting v. Town of Potter, 18 Blatchf. 165. It is well settled that, as to matters within the scope of their powers, municipal corporations may be estopped upon the same principles and under the same cir-

cumstances as natural persons or private corporations. Kneeland v. Gilman, 24 Wis. 39; Houfe v. Town, 34 Wis. 608; Chicago v. City, 79 Ill. 25; Martel v. City, 94 Ill. 67; Argenti v. San Francisco, 16 Cal. 255; Howe v. Keeler, 27 Conn. 538; Hart v. Stone, 30 Conn. 94; Bigelow, Estop. (4th Ed.) 524.

START, C. J.

This action was brought to recover the amount of twelve interest coupons cut from six bonds of the village of Sandstone. Each coupon was for $70. Six of them matured July 1, 1895, and six July 1, 1896. At the close of the evidence the trial court directed a verdict for the plaintiff for the amount claimed, and the defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

The bonds in question are payable to bearer, and are issued under and by virtue of the provisions of Laws 1893, c. 200 (G. S. 1894, §§ 1232–1239), for the purchase of a system of waterworks from the Sandstone Water Company. The village was authorized to purchase waterworks if the proposition to do so was submitted to, and adopted by, the electors of the village. G. S. 1894, § 1225. Each bond recited on its face that the village council had determined to purchase waterworks, and to raise money therefor by the issuance of the bonds; that it had submitted both these propositions to the vote of the electors at a special election, which had been duly called, noticed and held, and that the issuance of the bonds had been duly authorized by a majority of all the votes cast at the election; that the purchase was authorized by Laws 1893, c. 196 (G. S. 1894, § 1225), and the bonds by Laws 1893, c. 200; that in all things the requirements of the constitution and laws of the state had been complied with in the issuance thereof. And, further, that for the faithful performance of all the conditions of this bond, the faith and credit of said village of Sandstone is hereby irrevocably pledged. The bonds were never advertised for sale, as provided by Laws 1893, c. 200, § 5 (G. S. 1894, § 1236), but they were delivered to the Sandstone Water Company, on the transfer of its system of waterworks to the village, in payment therefor. The village paid the interest coupons on the bonds to July 1, 1894, the first to mature,

and has paid nothing on the bonds or interest since. The water-works for which the bonds were given were practically destroyed by the historic conflagration known as the "Hinckley Fire."

1. The defendant's first claim is that the bonds are not merely voidable, but absolutely void, for the reason that the village had no power to issue them, and therefore they are void in the hands of the plaintiff, without reference to the question whether it is or is not a bona fide purchaser thereof. It is claimed that the village had no power to issue the bonds under any circumstances, because there is not, nor ever was, any village of Sandstone; that the statute (Laws 1885, c. 145; as amended, see G. S. 1894, §§ 1198–1275) under which it attempted to organize as a municipal corporation is unconstitutional, for the reason that it delegates legislative functions to 30 private citizens; and, further, that it contravenes article 3 of the constitution of the state distributing the powers of government.

This statute, as construed in the case of State v. Minnetonka Village, 57 Minn. 526, 59 N. W. 972, is constitutional. The legislature by the statute fixed, determined and specified all the conditions and facts upon which the incorporation of certain territory should depend, and the powers of the municipal corporation so to be organized.

The point here made, that the statute is unconstitutional because legislative functions were delegated to the 30 petitioners who are authorized by the statute to take the initiative in the organization of the village by presenting a petition to the county commissioners, was made in the case of State v. Minnetonka Village, and by necessary implication, if not directly, was overruled; for it was held that discretion was not conferred upon the petitioners arbitrarily to determine how much and what territory should be included in the village. The legislature determined with practical certainty what territory might be incorporated as a village under the statute by limiting its operations to platted lands and other lands adjacent thereto, and so near the center of population thereon as to render them suburban in their character.

It is also claimed that the incorporation of the village was void because it included within the corporate limits territory not adjacent to the platted lands therein, within the meaning of the

statute as construed by this court. Whether unauthorized territory was included in the village is wholly immaterial in this case.
It is admitted' that since 1889, when the village, in form, at least,
was incorporated by a compliance with the statute as to all matters
of procedure and form, it has, whether a de jure corporation or not,
existed as a de facto municipal corporation, exercising in fact all
the powers of such a corporation, and that it has been recognized
as a village incorporated under the statute by the authorities of the
town, city and state in which its territory lies.

We have, then, a valid law under which the village might have
been incorporated as a de jure municipal corporation, an attempt so
to incorporate, and the continuous exercise of all of the powers of
such a corporation for more than four years before issuing its
bonds. The state has never questioned its existence as a de jure
municipal corporation, but has recognized it as such. Such being
the facts, the case is within the rule that, where a municipal corporation is acting under color of law and exercising all the functions and powers of a corporation de jure, and the legality of its
incorporation is not questioned by the state, but it has been recognized as such by the state for some years, neither the corporation
nor any private party can question the validity of its corporate
existence in a collateral action or proceeding. State v. Honerud,
66 Minn. 32, 68 N. W. 323; State v. Board of Co. Commrs., 66 Minn.
519, 528, 68 N. W. 767, 69 N. W. 925, and 73 N. W. 631; 1 Dillon,
Mun. Corp. (4th Ed.) § 43a; Cooley, Const. Lim. (6th Ed.) 309, 310;
15 Am. & Eng. Enc. 964.

It is also claimed that the bonds were issued without the authority of any law authorizing their issue, because the village did
not advertise the bonds for sale before they were issued. The question whether the village should purchase the waterworks of the
Sandstone Water Company, for the price of $6,000, also the question
whether the village should issue its bonds in the aggregate sum of
$6,000, to be used, or the proceeds thereof, to purchase the waterworks of the Sandstone Water Company, were each submitted to
the electors of the village, and each proposition was duly carried.
Thereupon the village council, instead of advertising the bonds for
sale and selling them for cash, and paying the money received from

them for the waterworks, issued the bonds direct to the water company in payment of the waterworks.

Conceding that the method adopted was not a substantial compliance with the statute, we have the question whether the failure to advertise and sell the bonds for not less than their par value renders them, in view of their recitals, void in the hands of a bona fide purchaser. The provisions of the statute (Laws 1893, c. 200) relevant to this question may be summarized as follows:

Section 1. Every village of this state is hereby authorized to issue its bonds for the purpose of raising money for any lawful public improvement therein by conforming to the provisions of this act.

Sec. 2. Whenever the village council shall determine, by resolution duly passed and recorded, to raise the amount of money stated therein for the purpose of erecting any public building or of making any other lawful improvement, it shall be the duty of the village council to cause the proposition to be submitted to the electors of the village.

Sec. 3 provides for the form of the ballot, and that the election shall be conducted, and the votes counted, canvassed and certified, in like manner as in the case of an election for village officers.

Sec. 4. If a majority of the votes cast are in favor of the proposition, the council may issue and negotiate the bonds, provided such bonds shall not be sold or negotiated for less than their face value, and that no village shall be authorized to issue bonds to an amount in excess of 10 per cent. of the assessed valuation of the property of the village, and that such bonds shall be payable not more than 20 years from the date of their issuance.

Sec. 5. Before any village shall be authorized to issue its bonds, the council shall give notice by publication in two county newspapers, and one newspaper published at the capital of the state, all of which newspapers shall be designated therefor by resolution of the council, that the council will receive bids for the sale of the bonds at the time and place to be named in such notice.

Sec. 6. At the time and place named in the notice, the council shall open and consider the bids, and award the sale of the bonds to the bidder offering to negotiate the same upon the best terms for the village.

It is to be noted that this statute requires that the resolution by which the council determined to raise money for making any public improvements shall be recorded, but that the resolution designating the newspapers in which the bonds are to be advertised for sale is not required to be recorded. The statute under which the de-

fendant village purports to have been incorporated requires the village recorder to keep a record of all of the proceedings and resolutions of the council. The statute under which the bonds were issued does not provide for any record of such advertisement other than such as the council itself might make, but it imposes the duty of making the advertisement on the council, and invests it with the power to decide whether the condition precedent, if it be such only, as to advertising the bonds for sale as required by section 5, had been complied with. Fulton v. Town of Riverton, 42 Minn. 395, 44 N. W. 257; National L. Ins. Co. v. Board of Education, 10 C. C. A. 637, 62 Fed. 778.

But it is urged by counsel for defendant that the provisions of section 5, to the effect that, before any village shall be authorized to issue its bonds, it shall advertise them for sale, is not simply a condition precedent to the exercise of the authority to issue bonds, but is a jurisdictional prerequisite to the conferring upon the village authority to issue its bonds. If this be so, then the council derives its power to issue the bonds from its own acts, and not from the statute. It could by its acts place itself in a position to exercise the authority conferred by the statute, but it could not create the authority. The statute and the vote of the electors authorized the council in this case to issue and negotiate the bonds of the village, and the advertising of the sale of the bonds was only a condition precedent to the exercise of the power already conferred upon the council. There was no lack of power on the part of the village to issue the bonds, but conditions were imposed on the exercise of the power. It would be difficult to construe this statute in any other reasonable way, and give effect to all of its provisions.

Such being the proper construction of the statute, we hold, following Fulton v. Town of Riverton, supra, that, if the plaintiff is a bona fide holder of the bonds for value without notice, the village is estopped by the recitals of the bond to avail itself of the defense that the bonds were not advertised for sale and sold for not less than par; or, in other words, that the recitals in the bonds that in all things the requirements of the constitution and laws of the state were complied with in the issuance thereof are conclusive as against a bona fide holder of the bonds.

2. This brings us to the question whether the plaintiff is a bona fide purchaser of the bonds.  The evidence is undisputed to the effect that the plaintiff loaned to Odin G. Clay $5,000, and took the bonds in question as collateral security therefor; that in taking them as such security it relied upon the recitals of the bonds, and had no notice or knowledge that any of them were untrue.  The bonds were so acquired by the plaintiff before the maturity of any of the interest coupons belonging thereto.  It is true, as urged by the defendant, that the president of the plaintiff, who made the loan and took the bonds for it, testified there was no question in his mind but what Clay would pay his loan; otherwise he would never have made the loan.  But it is also true that he took the bonds as security for the loan, and did not pay over the money on the loan until the bonds were delivered and he had read one of them.  His testimony, read as a whole, justifies no other conclusion except that he relied upon the bonds as security for the loan.  The bonds were so acquired by the plaintiff prior to July 1, 1894, and before any of the interest coupons had matured.  There was no default in the payment of either principal or interest until July 1, 1895.  Afterwards, and on January 23, 1896, the pledge was foreclosed by a sale of the bonds, and they were bid in by the plaintiff for $1,000; which was, less costs of sale, applied on Clay's note.

The plaintiff's rights as a bona fide holder date from the time it took the bonds as collateral security; for one who takes negotiable paper as collateral security for a loan or debt, in the usual course of business before its maturity, in good faith and without notice, is a bona fide holder of the paper, within the law merchant.  First Nat. Bank v. Bentley, 27 Minn. 87, 6 N. W. 422; Rosemond v. Graham, 54 Minn. 323, 56 N. W. 38; Haugan v. Sunwall, 60 Minn. 367, 62 N. W. 398.

The evidence conclusively shows that, if an individual had acquired these bonds in the same manner as the plaintiff did, he would have been, in law and fact, a bona fide purchaser thereof; but the plaintiff is a corporation authorized to manufacture and sell gas in the city of St. Paul, to use the streets for laying its mains, to hold real estate necessary for its business, and to borrow money.  Laws 1856, c. 53.  As a general rule, such a corporation has no implied

·power to loan money. Therefore the defendant insists that, as a matter of law, the plaintiff could not be a bona fide holder, because its act in loaning the money was ultra vires. The validity of the transaction between plaintiff and Clay is conceded, but it is urged that the plaintiff could not be an innocent party in doing that which, as against the state, was an unlawful act. The plaintiff acquired the bonds in the usual course of business,—that is, in accordance with the usages and customs of commercial transactions,—before maturity, for value and without notice, to secure a loan valid and legally enforceable against the borrower. It has the same legal right to make its security available as it has to pursue any other legal remedy to collect its debt. It necessarily follows, from the fact that the plaintiff is not deprived of any of its legal remedies to collect its debt because the parting with its money was ultra vires, that it may avail itself of the full benefit of its securities as a bona fide holder. The record in this case shows that the plaintiff was a bona fide holder of the bonds in question.

Order affirmed.